17215

HENRY E. WARDLAW, Respondent, v. WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, Appellant

(95 S. E. (2d) 253)

*John W. Crews, Esq.*, of Columbia, *for Appellant,*

*Messrs. C. T. Graydon, Weldon M. Easterling* and *John Grimball, all* of Columbia, *for Respondent,* ▮▮▮▮▮▮▮▮

November 1, 1956.

OXNER, Justice.

This is an action by Henry E. Wardlaw to recover disability benefits under a certificate of insurance issued to him by the Woodmen of the World Life Insurance Society. The trial resulted in a directed verdict in favor of the plaintiff for $500.00. The question presented by the appeal is whether the Court erred in refusing motions by defendant, timely made, for a nonsuit and a directed verdict upon the ground that the policy had lapsed for nonpayment of premium and no proof of total and permanent disability was filed while it was in force and effect.

On October 1, 1951, respondent became a member of the Society. On December 1, 1951, it insured his life for the sum of $1,000.00. The certificate called for the payment of a monthly premium of $2.96, together with camp dues, on the first day of each calendar month. The insured was allowed a grace period of one month in which to make any payment. In the event of default, he was permitted to revive the certificate at any time within three years upon the payment of all premiums in arrears, with interest, and "submission of evidence of insurability satisfactory to the Society." The certificate contained the following total and permanent disability provision:

"After this certificate shall have been in force for twelve months, if satisfactory proof is furnished to the Society, prior to age 60 of the member, and while no payment or camp dues are in default or within the period of grace, that the member is totally and permanently physically disabled and will be permanently, continuously and wholly prevented

thereby for life from performing any work for compensation or profit, or from engaging in any occupation or employment of a gainful nature, and if such disability has then existed for not less than ninety days, the Society will pay to the member in cash one-half of the face amount of this certificate, or the cash surrender value if greater, less any indebtedness to the Society, in full settlement, on the cancellation and surrender of this certificate. Satisfactory proof must be furnished within 18 months of the date of commencement of such disability."

It was determined by an examination made in September, 1952, that insured had pulmonary tuberculosis. He was admitted to the South Carolina Sanatorium at State Park on October 2, 1952, and has since been a patient in that institution. The attending physician testified that he would be there indefinitely and would never be able to resume any gainful occupation. It was his opinion, and there is no evidence to the contrary, that the insured is, and has been since October, 1952, totally and permanently disabled.

The monthly payments required by the certificate were personally made by the insured prior to his admission to the sanatorium. Thereafter they were made by his sister. It is undisputed that all payments were regularly made through March, 1953.

Insured's sister testified that she paid the premiums through September, 1953, after which the financial secretary refused to accept further premiums, stating that "the policy was dead and he couldn't accept any more until he found out from the company." The financial secretary testified that no payments were made after March, 1953 and that the insured was suspended, and the policy lapsed on May 1st for nonpayment of the April premium. However, there was introduced in evidence a receipt given by him on October 23, 1953, for $9.63, representing premiums for July, August and September, 1953 and camp dues of 75¢. When asked on cross-examination why he issued this receipt if the premiums

for May, June and July had not been made, he stated that this was due to a "mistake".

In reply to an inquiry made by insured's sister, the Society wrote her on August 4, 1954 that the certificate had been in suspension since May, 1953, for the non-payment of the April premium. Upon receipt of this letter, she forwarded to the Society the receipt which had been given her by the financial secretary covering premiums for July, August and September, 1953. On September 20, 1954 the Company replied that the receipt should have been for April, May and June, 1953, and enclosed check, payable to insured, for $17.76, representing payments for April through September, 1953. The Society further stated that "there are no benefits available to Mr. Wardlaw on the lapsed certificate." No explanation was given for refunding premiums for six months when, according to the Society, premiums had only been paid for three months. (The check above mentioned was never cashed by insured.)

Insured's sister testified that during the second week in October, 1952, she informed the financial secretary about her brother's being in the State Sanatorium and inquired what to do about the policy, and that he told her to continue to pay the premiums and he would file all necessary claims. The financial secretary admitted knowing that the insured was at the sanatorium but denied ever agreeing to file any claim on the policy. It seems to be conceded that no formal proof of claim was filed prior to 1954.

The foregoing review of the testimony will be found helpful in understanding the precise issues raised by the pleadings.

After alleging the issuance of the certificate with the total and permanent disability provision, it was alleged in Paragraph 4 of the complaint:

"That (while) said policy was in full force and effect, this plaintiff did become totally disabled and permanently

disabled, and that due demand has been made for the benefits under said policy and payments refused."

Appellant admitted the issuance of the certificate but denied Paragraph 4 of the complaint. It was then alleged in Paragraph 5 of the answer:

"That the plaintiff failed to pay installment due and payable for the month of April, 1953, and no satisfactory proof of good health was ever submitted to the defendant for reinstatement of said Certificate and the same was null and void and the plaintiff became suspended and insurance lapsed and was of no force and effect after May, 1953."

No motion was made to require respondent to make Paragraph 4 of his complaint more definite and certain by stating when he became totally and permanently disabled. Apparently from Paragraph 5 of the answer appellant thought respondent was making claim for disability arising after May, 1953 and was undertaking to defend on the ground that the policy had then lapsed. Be that as it may, the only issues raised by the pleadings are whether (1) respondent suffered total and permanent disability, and (2) if so, whether this occurred while the policy was in effect. The proof shows that he became totally and permanently disabled during the fall of 1952 and it is undisputed that the policy was then in force. It is, therefore, wholly immaterial whether premiums were paid during the six month period beginning in April, 1953, about which there seems to be so much controversy, or whether the policy was thereafter reinstated.

Appellant further contended on its motion for a directed verdict, and has argued in its brief, that no proof of disability was ever filed. But this is an affirmative defense which must be pleaded. *Thompson v. Aetna Life Insurance Co.,* 177 S. C. 120, 180 S. E. 880, and cases therein cited. No such defense is interposed in appellant's answer.

It is true that in *Lewis v. Woodmen of the World*, 172 S. C. 31, 172 S. E. 702, 704, the case principally relied on by appellant, the Court held that under the policy there involved, "the suffering of the disability must occur and the filing of proof thereof be made while the certificate is in full force and effect." But no question was made in that case as to the sufficiency of the pleadings to raise the issue of failure to file proof as required by the policy.

In view of the foregoing conclusion, we need not pass. upon respondent's contention that appellant is estopped by the conduct of its financial secretary from asserting that proof of disability was not filed as required by the policy, or his further contention that proof was unnecessary since appellant denied liability when contacted by insured's sister.

Judgment affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.