**STATE LIFE INS. CO. OF INDIANAPOLIS, IND., v. PARKS.**

**No. 4508.**

Court of Civil Appeals of Texas. Amarillo.

Nov. 25, 1935.

Rehearing Denied Jan. 6, 1936.

E. L. Klett, of Lubbock, and Milton W. Mangus, of Indianapolis, Ind., for appellant.

Lockhart & Brown, of Lubbock, for appellee.

MARTIN, Justice.

This case is an original one in Texas in its facts, so far as our investigation has disclosed. The queer reasoning and antagonistic views of the courts in other jurisdictions, regarding the controlling issue presented here, together with the importance of the question to insurance companies and their policyholders generally, compels a rather extended discussion of what appears to us to be a simple and easily solved legal question.

Appellee sued appellant on January 25, 1934, for monthly disability benefits, aggregating $1,125, together with penalty and attorney's fees. These monthly payments of $25 each were alleged to have accrued and became due and owing under two policies of insurance, both identical in terms and containing the controversial clauses hereafter quoted. The disability is alleged to have occurred in May, 1929, and recovery was sought and obtained for forty-five months thereafter, or until February, 1933. Cancellation was also sought of policy loan agreements, but this passes out with the disposition we make of this case and will not be further noticed. Judgment was entered for appellee as prayed for.

The policies each contained the following clauses:

"Total and Permanent Disability: If the insured, after paying at least one full annual premium and before default in the payment of any subsequent premium and before attaining the age of sixty years, shall become wholly and permanently disabled by bodily injury or by disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation, the Company, upon receipt at its Home Office of due proof of such disability of the insured as may be required by the Company, will grant the following benefits:

"First: Will waive payment of premiums thereafter becoming due;

"Second: In addition will pay to the insured a monthly income equal to one per cent of the original amount of insurance. The first monthly payment will be made upon satisfactory proof of disability as above provided, and the subsequent monthly payments will be made on the first day of each month thereafter during such disability. * * *

"Proofs similar to those originally required of such continuous disability must be furnished at any time, if requested by the Company, but not oftener than once a year, and if the insured should fail to furnish such proofs, or should so far re-

cover as to be able to engage in any gainful occupation, the obligation on the part of the Company to waive payment of premiums and pay to the insured a monthly income shall cease, and the insured shall resume payment of premiums in accordance with this contract beginning with the first premium becoming due after failure to furnish such proofs or after the date of such recovery.

"If there be any indebtedness on account of or secured by this policy the accrued interest thereon shall be deducted from each income payment."

Appellee was permanently disabled in May, 1929. He did not furnish any proof of disability until February, 1933, nor did he allege or prove any excuse for such failure. On July 1, 1933, appellee filed suit against appellant in county court, alleging in part: "Plaintiff alleges that he made proof of such disability and furnished the defendant with such proof on or about the 6th day of February 1933, and under the terms and provisions of said policy, the defendant should have paid to the plaintiff, upon receipt of such proof, the said sum of $25.00 and likewise the defendant should have paid and is bound and obligated to pay by the terms of said policies a like sum on the first day of March, April, May, June, July, August, Sept. Oct., and November 1933, or the total sum of $225.00."

Judgment was recovered for $349, and paid by appellant. Thereafter, this suit was filed for disability benefits occurring prior to the dates last mentioned; that is, from May, 1929, to February, 1933. We do not pass on appellant's plea and proof of res adjudicata.

Under the above facts, appellant here claims that the furnishing of proof of total disability marks the beginning of the period for which it is liable for disability benefits, the appellee that the beginning of disability marks such period.

Stated otherwise, in plain language, appellee contends in effect that this and other courts have plainly decided that under the policy stipulations already quoted he may recover a lump sum, as he did here, without making any proof of disability for nearly four years, and without pleading or proving any excuse for such failure, this because proof of total and permanent disability established liability and waiver took effect as of such date. This contention is based largely upon the following language of Judge McClendon in State Life Ins. Co. v. Barnes (Tex.Civ. App.) 58 S.W.(2d) 189, 190 (writ refused): "While the authorities in other jurisdictions are not in accord upon the question, those in this state, which we think are supported by the better reasoning, hold that the waiver took effect at the time of the disability, and did not depend upon the time when proof thereof was furnished."

Judge McClendon had before him a radically different state of facts from these. He merely was attempting to state the law of the case before him, and in our opinion the quoted expression does not rule this case. The disability in the Barnes Case last mentioned was insanity. This has often been held to be a valid excuse for failure to make proof of disability. See Annotations in 54 A.L.R. 611, 59 A.L.R. 1080, Cooley's Briefs on Insurance (2d Ed.) vol. 7, p. 5918, where many authorities are collated. Proofs were made in the Barnes Case within a reasonable time after the death of Barnes and the discovery of the waiver provision of the policy. The construction placed by Judge McClendon on the policy did not completely read out of it some of its important provisions. Moreover, one of the questions in the Barnes Case was one of forfeiture of all rights, not favored in law and not present in this case. Waiver of premium payments and forfeiture of the policy were the controlling questions, not liability, as here, for monthly benefit payments to one still living upon receipt of proof of disability. Here the appellee was able to go about and attend to some business. He was in complete possession of his mental faculties and was living still at this trial and able to vigorously testify. He waited almost four years before he filed any proof of disability. This was an unreasonable time as a matter of law. Cooley's Briefs on Insurance (2d Ed.) vol. 7, p. 5916. Under such facts and in the face of the above stipulations of the policy, we find no case where recovery has been allowed, though many expressions occur under other facts, which sustain appellee's theory.

In our opinion, under the present facts, the liability of appellant for monthly payments began upon the filing of proofs of disability with it by appellee, and judgment should have been for appellant.

This conclusion is inescapable, it seems, when the quoted language of the policy is

interpreted and construed in the light of the facts and circumstances surrounding the contracting parties. An insurance company must know its assets and liabilities, not only because the most elementary principles of business demand it, but because the statute itself commands it, and requires a report of these under oath. In December, 1932, how could appellant report a liability of $1,100 owing appellee or show it in its totals, when it was unaware of same, though the debt then was nearing its fourth year and steadily becoming larger? How can reserves be set up to meet liabilities that are unknown and being hidden? Again, what protection have insurance companies against almost certain fraud, in many cases, if notice to them or proof of disability is to be delayed until time has obliterated all the tracks of its perpetrator?

Undoubtedly concerned with some or all of the matters above mentioned, the appellant cast its contract into the following language in part: "Upon receipt * * * of due proof of such disability * * * will pay * * * a monthly income * * * The first monthly payment will be made upon satisfactory proof of disability * * * The subsequent monthly payments will be made on the first of each month thereafter during such disability." Keeping in mind the problems it faced as set out above, we think it aptly chose language which made its liability begin only "upon satisfactory proof of disability." We here call attention to the claim of appellee for a lump sum in the face of a contractual obligation calling for monthly payments. Again the obligation of appellee was to furnish yearly proofs. Both of the above are read entirely out of the contract if appellee's contention be sustained. We quote from the very recent case of Holtz v. New York Life Ins. Co. (Del.Super.) 179 A. 497, 499:

"The contract of the defendant generally is to pay to the insured a certain monthly income, upon receipt at the Company's Home Office, before default in the payment of premium, of due proof that the insured became totally and permanently disabled; and, specifically, that the first income payment shall become due on the first day of the calendar month following receipt of proof of total and permanent disability. These stipulations are lawful and reasonable. Their object is to acquaint the company with the occurrence of the disability, so that it may make proper investigation and take such action as may be necessary to protect its interests.

"We are concerned with a phase of the contract which contemplates a protection to the insured during his lifetime. If the argument of the plaintiff is sound, no proof of disability need be made during the life of the insured, but may be submitted after his death, and, thereupon, the company becomes liable for the payment of the aggregate of the monthly installments of income from the occurrence of the disability to the death of the insured.

"The necessary conclusion would be that the policy constitutes a hybrid contract of insurance which, at the pleasure of the insured, may be availed of as a benefit to himself personally, or as a means of enhancement of his estate upon his death, a result quite outside of the purview of the contract. * * *

"The contract is not to pay disability benefits as and when total and permanent disability may arise, but upon receipt of due proof of such disability."

The cases appearing to sustain appellee will in general be found to have present one or all of the following facts:

1. Mental or physical condition of the beneficiary which rendered impossible the filing of proofs.

2. A beneficiary who was not a party to the contract and was ignorant of its terms.

3. The actual filing of proofs within a reasonable time.

The case of Minnesota Mut. Life Ins. Co. v. Marshall (C.C.A.) 29 F.(2d) 977, 979, is the case believed by us to be more nearly in point for appellee than any cited. While we are not able to follow all of its strange reasoning, we take from it the following excerpt, which seems in part to apply here: "A construction making the disability benefits to begin as of the time of proof might be all right where such benefits are sought while the insured is living, but a disability provision such as the one to be construed here, where the disability occurs near the due date of the premium and continues until death, is made worthless by holding the proof of disability and not the disability itself makes it operative."

We conclude this phase of the discussion with a syllabi quotation from the case of Missouri State Life Ins. Co. v. Le Fevre

(Tex.Civ.App.) 10 S.W.(2d) 267, cited by Judge McClendon in the Barnes Case as sustaining his view: "In suit on life insurance policy providing for waiver of premiums in case of total disability, petition failing to allege either that proof of disability was furnished in accordance with requirement of policy, or to allege excuse for failure to furnish such proof, held fatally defective; it being incumbent under provisions of policy, in order that disability benefits be available, to prove either that proofs were made or facts excusing making of same."

Turning now to a consideration of the cases which sustain our conclusion, either outright or by analogy, we cite first the case of Peoria Life Ins. Co. v. Bergholm (C.C.A.) 50 F.(2d) 67, affirmed by the United States Supreme Court February 15, 1932, see 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416. Its facts are strikingly similar to those of the present case. For convenience, we here set out in parallel columns the controversial clauses of the policies in the two cases, the first being those of the present case:

"* * * Upon receipt at its Home Office of due proof of such disability of the insured as may be required by the Company, will grant the following benefits:

"First: Will waive payment of premiums thereafter becoming due;

"Second: In addition will pay to the insured a monthly income equal to one per cent of the original amount of insurance. The first monthly payment will be made upon satisfactory proof of disability as above provided, and the subsequent monthly payments will be made on the first day of each month thereafter during such disability."

"Upon receipt by the Company of satisfactory proof that the Insured is totally and permanently disabled as hereinafter defined the Company will

"1. Pay for the Insured all premiums becoming due hereon after the receipt of such proof and during the continuance of the total and permanent disability of the Insured and will also

"2. Pay to the Insured a Monthly Income for life of 1% of this Policy: The first payment of such income to be paid immediately upon receipt of such proof and subsequent payments to be made on the first day of each month thereafter as long as the Insured shall live and be totally and permanently disabled as hereinafter defined."

We construe the Supreme Court opinion as neither approving nor condemning the Marshall Case, supra, which it briefly noticed. It is therein stated: "In that view, the obligation to furnish proof was no part of the condition precedent to the waiver; but such proof might be furnished within a reasonable time thereafter. Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy. Compare Brams v. New York Life Ins. Co., 299 Pa. 11, 14, 148 A. 855." Other cases are: Jefferson Standard Life Ins. Co. v. Williams (Tex.Civ.App.) 62 S.W.(2d) 661 (writ refused); Brotherhood of Ry. Trainmen v. Dee, 101 Tex. 597, 111 S.W. 396; Craig et al. v. Golden Rule Life Ins. Co., 184 Ark. 48, 41 S.W.(2d) 769; Parker v. Jefferson Standard Life Ins. Co., 158 S.C. 394, 155 S.E. 617; Burns v. American National Ins. Co. (Tex.Com.App.) 280 S. W. 762; Northwestern Mutual Life Ins. Co. v. Dean, 43 Ga.App. 67, 157 S.E. 878; Lewis v. Woodmen of the World, 172 S.C. 37, 172 S.E. 702; Hayes v. Prudential Ins. Co. (W.Va.) 171 S.E. 824; Jabara v. Equitable Life Assur. Society, 280 Ill. App. 147; Black v. Jefferson Standard Life Ins. Co., 171 S.C. 123, 171 S.E. 617; Wick v. Western Union Life Ins. Co., 104 Wash. 129, 175 P. 953; Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887; Smith v. Missouri State Life Ins. Co. 134 Kan. 426, 7 P.(2d) 65; New England Mut. Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A.L.R. 1075; Western & Southern Life Ins. Co. v. Smith, 41 Ohio App. 197, 180 N.E. 749; Mobley v. New York Life Ins. Co., 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621, 99 A.L.R. 1166.

■ Accordingly we hold:

1. That receipt by the appellant of the proof of disability called for in its policies was a condition precedent to the right of appellee to sue, and that the furnishing of such had to be pleaded and proven, or a legal excuse for his failure properly alleged and shown.

2. That under the stipulations quoted and the undisputed facts, the receipt by appellant of such proof marks the beginning of the period of its liability for monthly payments.

3. That at all events, the policy provisions quoted required as a condition of liability the making of such proof within

a reasonable time, which was not done in the present case.

Judgment of the trial court will be reversed and here rendered for appellant.

Reversed and rendered.